# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| CHRIS BAGWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case no. 5:14-cv-0249-AKK-TMP |
| | ) |
| GOVERNOR ROBERT BENTLEY, et al., | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Chris Bagwell, hereinafter referred to as the plaintiff, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration at Limestone Correctional Facility in Capshaw, Alabama. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

### I. Procedural History

In his complaint, the plaintiff names Governor Robert Bentley, Prison Commissioner Kim Thomas, Dr. Stubbs, and Corizon Medical Services as defendants, and seeks nominal, compensatory and punitive damages. (Doc. 1).

1

On November 14, 2014, the undersigned ordered the plaintiff to amend his complaint in the following manner:

> The plaintiff declares Dr. Stubbs is employed by Corizon Medical Services and the Department of the Corrections "despite a history of dereliction in the medical field while employed in the State of Louisiana." ([Doc. 1 at 6]). However, he provides facts to support this conclusory statement. Therefore, the plaintiff is **ORDERED** to amend his complaint within **twenty (20) days** of the entry date of this order.
>
> In the amended complaint, the plaintiff must set out Dr. Stubbs's alleged medical dereliction in the State of Louisiana in detail. Such detail must include dates, places and a full explanation of the particular incidents constituting medical dereliction.

(Doc. 8 at 2).

In response to the court's directive, on November 26, 2014, the plaintiff filed a "Motion for Leave to File an Amended Complaint." (Doc. 9). In the motion, the plaintiff moves to strike Governor Robert Bentley as a defendant. (*Id.* at 1-2). He also declares he "has determined" Dr. Stubbs's name is "Randy Stubbs," and makes allegations concerning Stubbs's treatment of an individual named Richard Cunningham in October 2002. (*Id.* at 2).[1]

To the extent the plaintiff moves to strike Governor Bentley as a defendant, the plaintiff's motion shall be construed as a motion for voluntary dismissal pursuant

---

[1] The plaintiff cites Dr. Stubbs's name numerous times in his motion to amend the complaint. In only one instance does he spell Dr. Stubbs's last name "Stabbs." (Doc. 9 at 2). Therefore, the court presumes this defendant's last name is spelled "Stubbs."

2

to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, and it is due to be GRANTED.  The plaintiff's motion amend the complaint to identify Dr. Stubbs as Dr. Randy Stubbs, and set out allegations concerning Stubbs's professional medical history in Louisiana also is due to be GRANTED.

## II.  Standard of Review

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 804, 110 Stat. 1321, 28 U.S.C. § 1915A, requires the court to screen complaints filed by prisoners against officers or employees of governmental entities and to dismiss the complaint or any portion of the complaint it determines is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  Where practicable, the court may *sua sponte* dismiss a prisoner's complaint prior to service.  *See* 28 U.S.C. § 1915A(a).

A dismissal pursuant to § 1915A (b)(1) for failure to state a claim is governed by the same standards as dismissals for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *See Jones v. Bock*, 549 U.S. 199, 215 (2007).  To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not" suffice.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Because "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys[,]" they are liberally construed.  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

### III.  Factual Allegations

The plaintiff alleges on October 22, 2013, he submitted a medical request seeking treatment "after [his] testicle began swelling and causing extreme pain and discoloration. [He] was seen by Dr. Stubbs[,] a doctor with Corizon Medical Services . . . [,] the provider at Limestone" Correctional Facility.  (Doc. 1 at 5).  At this time, the plaintiff's testicle was the size of a baseball.  (*Id.*).  The plaintiff explained to Stubbs that he "experienced similar complications before" and that he had been "instructed by a previous outside doctor to report this problem immediately."  (*Id.*).  Stubbs showed no interest in the plaintiff's condition, and conducted no examination or testing.  (*Id.*).  Instead, he "prescribed an antibiotic and waived his hand[,] stating[,] 'Get out!'"  (*Id.*).  Stubbs also insisted the plaintiff's condition was an "'infection' and that was final."  (*Id.*).

For the next five days, the plaintiff complained of "further swelling and pain to the point of tears" at the nurse's station.  (*Id.* at 6).  Stubbs refused to see the plaintiff on every single occasion.  (*Id.*).  Over a week had passed when "a

4

different doctor, Dr. Hood, was on station" and agreed to see the plaintiff.  (*Id.*). After examination, Hood immediately sent the plaintiff to Brookwood Hospital in Birmingham, Alabama, for emergency surgery.  (*Id.*).  The surgeon at Brookwood, Dr. Strange, "not[ed] that [the plaintiff's] testicle was grossly swollen[, . . .] had turned black[, and] immediately" ordered surgery.  (*Id.*).  Strange informed the plaintiff if he had been "properly examined earlier" the removal of his testicle would not have been required.  (*Id.*).

The plaintiff declares Dr. Stubbs is employed by Corizon Medical Services and the Department of the Corrections "despite a history of dereliction in the medical field while employed in the State of Louisiana."  (*Id.*).  In support thereof, he alleges Stubbs, an "orthopaedic surgeon[,]" saw one Richard Cunningham on October 14, 2002.  (Doc. 9 at 2).  "Cunningham reported 'lower back pain' since August 23, 2002[,]'" when he "'bent over to get a drink out of the ice chest[,]'" and informed Stubbs that "Dr. Plauche" had "ordered plain film x-rays" and "treated him with some Vioxx, Skelaxin and Hydrocodone."  (*Id.*).  "Cunningham was still taking Vioxx and Skelaxin."  (*Id.*).  It was Dr Stubbs's "impression [from the x-rays]. . . that Cunningham had 'mild degenerative disc disease with low back pain."  (*Id.*).  Stubbs's "treatment plan included back exercises and a prescription for physical therapy.  Cunningham was also given 'some anti-inflammatories'

5

[and] 'was to return' in several weeks." (*Id.*).

Finally, the plaintiff alleges the "Alabama prison system is undisputedly the most overcrowded in the United States." (Doc. 1 at 8). He asserts Commissioner Thomas has "failed to alleviate such conditions." (*Id.*). Moreover, "in an attempt to cut cost[s]," Thomas "employ[s] or contract[s]" with "undesirable" and "inadequate service providers" such as Stubbs, who denied plaintiff adequate medical care.

## IV.  Analysis

### A.  Dr. Randy Stubbs

The plaintiff claims Dr. Randy Stubbs was deliberately indifferent to his serious medical needs. In *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976), "the Supreme Court held that deliberate indifference to serious medical needs is proscribed by the Eighth Amendment's prohibition against cruel and unusual punishment." *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994). A two-part analysis is employed in determining whether an Eighth Amendment violation has occurred. "First, we must evaluate whether there was evidence of a serious medical need; if so, we must then consider whether [the defendants'] response to that need amounted to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). The first inquiry is objective; the second inquiry is

subjective.  *See Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1186 (11th Cir. 1994).

"'[A] "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1187 (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)).  "[T]he medical need of the prisoner need not be life threatening" to be considered "serious."  *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988).

The second part of the inquiry -- whether the response of the defendant amounted to deliberate indifference -- is itself a two-part determination.  A defendant may be held liable for an Eighth Amendment violation only if he had "knowledge of the [plaintiff's] particular medical condition," *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1191 (emphasis omitted), *and* he acted intentionally or recklessly to deny or to delay "access to medical care" or to interfere "with the treatment once prescribed."  *Estelle v. Gamble*, 429 U.S. at 104-05.  *See also Mandel v. Doe*, 888 F.2d at 788.  *See generally Farmer v. Brennan*, 511 U.S. 825, 833-842 (1994).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the Cruel and Unusual

Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "Mere negligence or medical malpractice" on the part of the defendants is not sufficient to support an Eighth Amendment claim. *Mandel v. Doe*, 888 F.2d at 787-88. *See also Barfield v. Brierton*, 883 F.2d 923, 939 (11th Cir. 1989). Therefore, an accidental or inadvertent failure to provide medical care or negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *Estelle*, 429 U.S. at 106.

A painful, discolored testicle that has swelled to the size of a baseball clearly is a serious medical need. Yet, Dr. Stubbs adamantly refused to consider information the plaintiff received from another medical professional about his condition, and summarily dismissed him with an antibiotic prescription to cure a purported infection despite the fact Stubbs had not examined or tested the plaintiff. Moreover, Dr. Stubbs repeatedly refused to provide medical examinations and treatment to the plaintiff for five straight days thereafter. During this time period, the plaintiff's condition continued to worsen and his cries for help fell on deaf ears. The plaintiff received an examination from another doctor approximately one week later, and was immediately sent to an outside hospital for an emergency operation. His testicle was removed, a procedure that would not have occurred had Dr. Stubbs properly examined and treated the plaintiff.

The facts show recklessness, obduracy and wantonness on Stubbs's part. Dr. Stubbs should be directed to respond to the allegations made by the plaintiff.

**B.     Corizon Medical Services**

The plaintiff names Corizon Medical Services (CMS), the corporation providing medical services at Limestone Correctional Facility at the time of the events made the basis of his medical care claim. While a corporation providing prison medical services may be liable under § 1983 if it is established that the constitutional violation was the result of the corporation's policy or custom, *see Buckner v. Toro,* 116 F.3d 450 (11th Cir.1997); *Ort v. Pinchback,* 786 F.2d 1105, 1107 (11th Cir.1986), such a corporation may not be held liable under § 1983 on the basis of *respondeat superior, see Harvey v. Harvey,* 949 F.2d 1127, 1129–30 (11th Cir.1992); *Monell v. Department of Social Services,* 436 U.S. 658 (1978). The plaintiff has made no factual allegations against CMS in his complaint. As such, his attempt to attach liability to CMS is based solely on *respondeat superior*, which is not available in Section 1983 cases. Accordingly, the claim against CMS is due to be dismissed.

**C.     Prison Commissioner Thomas**

**1.     Employment of inadequate health care service providers**

The plaintiff names Commissioner Thomas as a defendant, but has not alleged

9

Thomas was aware of or personally involved in the circumstances that resulted in the loss of his testicle. Instead, the plaintiff attempts to name Commissioner Thomas as a defendant through the concept of *respondeat superior*. However as previously stated, "[t]here is no *respondeat superior* liability under §1983." *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995) (citing *Monell v. Dept. of Social Services*, 436 U.S. at 690-92 (1978); *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993)). Absent some allegation defendant Thomas knew of, sanctioned, participated in or was otherwise "affirmatively linked" to the actions giving rise to the plaintiff's Eighth Amendment medical care claim, the claim against Thomas is insufficient to state a cause of action under 42 U.S.C. §1983. *See Gilmere v. City of Atlanta*, 774 F.2d 1495, 1504 (11th Cir. 1985).

Thomas was unaware of and did not participate in the lack of medical care provided to the plaintiff. The plaintiff does allege Thomas employs or contracts with inadequate health care providers like Dr. Stubbs as a cost-cutting measure, which can be interpreted as a contention that Thomas sanctioned or was otherwise affirmatively linked to the lack of medical care he received. The plaintiff points to the 2002 treatment Dr. Stubbs provided to Richard Cunningham to indicate Dr. Stubbs has a history of medical dereliction. But even when the plaintiff's allegations are construed liberally in his favor, the facts underlying Dr. Stubbs's

assessment and treatment of Cunningham do not show any medical improprieties whatsoever, much less medical malpractice in connection with or deliberate indifference to Cunningham's condition. The plaintiff provides no other examples of medical dereliction and does not assert Stubbs has ever been reprimanded by or his license revoked by any State Medical Board based on his lack of medical skills or professionalism.

Thus, the plaintiff has failed to set forth facts that establish Dr. Stubbs's professional reputation was significantly tarnished before he was hired to provide medical care to Alabama inmates, and no facts that exhibit Thomas was aware of any significant history of professional misfeasance by Stubbs. He also has failed to state facts that reveal Prison Commissioner Thomas – as opposed to CMS, Dr. Stubbs's employer -- was personally responsible for hiring Dr. Stubbs.

For the foregoing reasons, the plaintiff has failed to allege facts that display defendant Thomas sanctioned or was otherwise affirmatively linked to the events surrounding the lack of medical care provided to him for his testicular condition. Accordingly, the Eighth Amendment medical care claim against defendant Thomas is due to be dismissed.

### 2. Overcrowded conditions of confinement

The plaintiff complains defendant Thomas has not alleviated the overcrowded

Case 5:14-cv-00249-AKK-TMP   Document 10   Filed 12/02/14   Page 12 of 16

conditions in Alabama's prison system.  "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  In order to establish an Eighth Amendment violation, a plaintiff "must prove three elements:  (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment],  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), (2) the defendant[s'] 'deliberate indifference' to that condition, *Wilson v. Seiter*, [502] U.S. [294, 303] (1991), and (3) causation, *Williams v. Bennett*, 689 F.2d 1389-90 (11th Cir. 1982)."  *LaMarca v. Turner*, 995 F.2d at 1535 (parallel citations and footnotes omitted).  Whether a particular condition of confinement constituted cruel and unusual punishment is an objective inquiry; whether prison officials were deliberately indifferent to that condition is a subjective inquiry.  *See Wilson v. Seiter*, 502 U.S. at 290.

The plaintiff's entire claim is comprised of a conclusory allegation that Alabama's prison system is undisputedly overcrowded, and Commissioner Thomas has failed to alleviate that condition.  Once again, the plaintiff is attempting to name Commissioner Thomas as a defendant through the concept of *respondeat superior*, which an unavailable form of liability under Section 1983.   Alternatively, the fact that a prison is overcrowded does not establish an extreme deprivation prohibited by

12

the Eighth Amendment unless it leads to unconstitutional conditions in the facility. *See Parrish v. Alabama Department of Corrections*, 156 F.3d 1128, 1129 n. 1 (11th Cir. 1998) (citing *Rhodes v. Chapman*, 425 U.S. at 347-48).  The only deprivation alleged by the plaintiff in this action relates to the inadequate medical treatment of his swollen testicle, but there is no allegation that this deprivation was the product of overcrowding in the prison.  There is no factual basis on which to infer that the medical treatment would have been adequate but for the general overcrowding of the prison.  Whatever overcrowding existed was not causally linked to the plantiff's poor medical treatment.[2]

Because a "complaint must allege the relevant facts 'with some specificity[,]'" it "will be dismissed as insufficient where the allegations it contains are vague and conclusory."  *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (quoting *GJR Investments, Inc. v. County of Escambia,* 132 F.3d 1359, 1367 (11th Cir.1998); *Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir. 1984)).  The plaintiff's allegations against defendant Thomas are factually and legally

---

[2] Indeed, plaintiff's own description of the facts undermines the inference that his poor medical treatment was caused by overcrowding.  He was seen by Dr. Stubbs on a timely basis, and he was able to return to the nurse's station seeking additional treatment, even after Dr. Stubbs refused to provide further care.  Ultimately, plaintiff was seen by another doctor, who provided prompt medical treatment.  There is nothing to indicate that plaintiff did not receive treatment because of overcrowding.  The delay in treatment was not caused by an inability to be seen by a physician due to the large number of inmates in the prison.  The delay, as alleged by plaintiff, was due to Dr. Stubbs's deliberate indifference to his medical condition.

unsupported. Accordingly, the Eighth Amendment conditions of confinement claim against defendant Thomas is due to be dismissed for failure to state a claim upon which relief may be granted.

### V.  Recommendation

Accordingly, for the reasons stated above, the magistrate judge RECOMMENDS:

- the plaintiff's motion to amend the complaint (doc. 9) to identify defendant Dr. Stubbs as Dr. Randy Stubbs, and set out allegations concerning Stubbs's professional medical history in Louisiana be **GRANTED**,

- the plaintiff's motion to voluntarily dismiss (doc. 9) Governor Robert Bentley as a defendant pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure be **GRANTED** and the claim be **DISMISSED**,

- all claims against defendants Corizon Medical Services and Prison Commissioner Kim Thomas be **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and/or (2), and

- the Eighth Amendment medical care claim against Dr. Randy Stubbs be **REFERRED** to the undersigned magistrate judge for further proceedings.

### VI.  Notice Of Right To Object

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court.  **Any objections to the failure of the magistrate judge**

14

**to address any contention raised in the petition also must be included.** Failure to do so will bar any later challenge or review of the factual findings **or legal conclusions** of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S. Ct. 899, 88 L. Ed. 2d 933 (1986); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982)(*en banc*).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record.  The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is DIRECTED to mail a copy of the foregoing to the petitioner at his most recent address.

**DATED** this 2nd day of December, 2014.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE